No. 26-1062

IN THE

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


**Scarlett Pavlovich,**

*Plaintiff-Appellant*

**v.**

**Amanda Palmer,**

*Defendant-Appellee*


On Appeal from the United States District Court
for the District of Massachusetts
Civil Action No. 25-10263-NMG


**BRIEF OF APPELLANT SCARLETT PAVLOVICH**


SUBMITTED BY:
Lane A. Haygood
**Kamerman, Uncyk, Soniker &
Klein, P.C.**
1700 Broadway
New York, NY 10019
(212) 400-4930
lhaygood@kusklaw.com


**ORAL ARGUMENT REQUESTED**

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 1st Cir. R. 26.1, Plaintiff-Appellant Scarlett

Pavlovich is an individual. No corporate disclosure statement is required.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is appropriate in this case. This appeal raises issues of first impression in this Circuit concerning whether the civil remedy provision of the Trafficking Victims Protection Act, 18 U.S.C. § 1595(a), applies extraterritorially, and whether the doctrine of *forum non conveniens* may be used to defeat a statutory grant of specific jurisdiction in U.S. courts. These issues directly affect the ability of victims of international human trafficking to seek redress in United States courts as Congress intended.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................ i
STATEMENT REGARDING ORAL ARGUMENT .................................... ii
TABLE OF CONTENTS ...................................................................... iii
TABLE OF AUTHORITIES...................................................................v
JURISDICTIONAL STATEMENT ......................................................... viii
STATEMENT OF THE ISSUES ..............................................................1
STATEMENT OF THE CASE ..................................................................2
STATEMENT OF FACTS ......................................................................3
SUMMARY OF THE ARGUMENT..........................................................5
ARGUMENT.......................................................................................9

    I.   STANDARD OF REVIEW...............................................................9

    II.  CONGRESS'S 2008 AMENDMENT TO THE TVPA DELIBERATELY OPENED UNITED STATES COURTS TO CIVIL CLAIMS ARISING OUT OF U.S. CITIZENS' EXTRATERRITORIAL CONDUCT. ...........................................9

        A.    The TVPA Clearly and Unambiguously Provides a Civil Remedy for Extraterritorial Conduct. ..................................10

        B.    *RJR Nabisco*'s Holding Regarding RICO Does Not Change the Analysis.........................................................14

    III.  THE COMMON LAW DOCTRINE OF FORUM NON CONVENIENS HAS NO APPLICATION TO TVPA CLAIMS. 17

IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN

BALANCING THE PUBLIC AND PRIVATE INTEREST

FACTORS. ..................................................................................20

    A.    The Public Interest Factors Strongly Favor Retention of

        Jurisdiction...................................................................21

    B.    The Private Interest Factors Favor Retention or Are Neutral

        .....................................................................................24

V. NEW ZEALAND IS NOT AN ADEQUATE ALTERNATIVE

FORUM. .....................................................................................27

    A.    The ACC Mental health services are inadequate.................27

    B.    The availability of exemplary damages is insufficient........30

CONCLUSION .......................................................................................31

ADDENDUM

    Memorandum & Order (Feb. 6, 2026) ................................................. Tab 1

    Final Order of Dismissal (Feb. 6, 2026) .............................................. Tab 2

# TABLE OF AUTHORITIES

**Cases**

*A.A. v. Omnicom Grp., Inc.*, No. 25-CV-3389 (JMF), 2026 WL 504904, at *17 (S.D.N.Y. Feb. 24, 2026)................................................................................................14

*Abernathy v. Carlyle Grp., Inc.*, No. CV 22-3603 (ABJ), 2024 WL 5331993, at *13 (D.D.C. Sept. 27, 2024) .............................................................................14

*Adelson v. Hananel*, 510 F.3d 43, 51 (1st Cir. 2007) ............................................. 9, 20, 23

*Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184 (5th Cir. 2017) ..............................1

*American Dredging Co. v. Miller*, 510 U.S. 443 (1994) ......................................................17

*F.C. v. Jacobs Solutions Inc.*, 790 F.Supp.3d 1158, 1183 (D.Colo. Jun. 26, 2025)............12

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947) ..........................................................17

*Howe v. Goldcorp Invs. Ltd.*, 946 F.2d 944 (1st Cir. 1991)................................................18

*Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 104 (1st Cir. 2020)................... 9, 20, 23, 27, 28

*Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000).............................................24

*La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983) ..........................18

*Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 431 (1st Cir. 1991) ......................... 23, 24, 26

*Miles v. Illinois Cent. R. Co.*, 315 U.S. 698, 705 (1942) ...................................................17

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010) ...................................10

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) ................................ 26, 27, 30, 31

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 339 (S.D.N.Y. 2003) ...............................................................................................................23

*Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 953 (9th Cir. 2024) ...................................11

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) .......................................... 1, 6, 10, 11, 14

*Sysco Mach. Corp. v. Cymtek Sols., Inc.*, 124 F.4th 32, 37 (1st Cir. 2024) ......................9, 21

*TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)................................................................20

*U.S. v. Nat'l City Lines*, 334 U.S. 573, 588–89 (1948) ............................................. 17, 19

*United States v. Baston*, 818 F.3d 651, 671 (11th Cir. 2016).............................................16

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) .....................................22

**Statutes**

1332 .......................................................................................................................17

18 U.S.C. § 1589.................................................................................................2, 12

18 U.S.C. § 1595(a)......................................................... ii, 1, 2, 6, 11, 12, 15, 16, 28

18 U.S.C. § 1596................................................................................... 1, 11, 12, 13

18 U.S.C. § 1964(c)..................................................................................................15

18 U.S.C. §§ 1590(a) .................................................................................................2

18 U.S.C. §§ 1591 .................................................................................................2, 12

18 U.S.C. §§ 1594 .....................................................................................................2

22 U.S.C. § 7101....................................................................................... 12, 22, 24

22 U.S.C. § 7101(b)(24) ............................................................................................12

28 U.S.C. § 1291 ................................................................................... viii

28 U.S.C. § 1331 .............................................................................. viii, 17

28 U.S.C. § 1350 ..........................................................................................19

28 U.S.C. § 1367 ................................................................................... viii

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, PL

110-457, § 223(a), Dec. 23, 2008, 122 Stat. 5071 .....................................................12

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 to hear this case because Plaintiff-Appellant Scarlett Pavlovich ("Pavlovich" or "Scarlett") brought claims under the civil remedies provisions of the Trafficking Victims Protection Act, 18 U.S.C. Chapter 77 (the "TVPA"). The district court also exercised supplemental jurisdiction over Pavlovich's negligence claim under 28 U.S.C. § 1367.

This Court has jurisdiction under 28 U.S.C. § 1291, as Appellant appeals from a final order of the United States District Court for the District of Massachusetts entered on February 6, 2026, dismissing the action without prejudice for *forum non conveniens*. The dismissal is a final, appealable order because it effectively terminates Appellant's ability to litigate in any United States court. Notice of appeal was timely filed.

Defendant-Appellee Amanda Palmer ("Palmer") is a citizen of the United States of America who is currently domiciled in and a resident of the Commonwealth of Massachusetts.

Plaintiff-Appellant Scarlett Pavlovich ("Scarlett") is a citizen of New Zealand who currently resides in the United Kingdom.

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in concluding that the civil remedy under the Trafficking Victims Protection Act ("TVPA") does not apply extraterritorially, when Congress expressly provided in 18 U.S.C. § 1595(a) and § 1596 that "an individual who is a victim of a violation of this chapter" may bring a civil action in a United States District Court (especially where the TVPA's criminal prohibitions have extraterritorial effect).

2.  Whether the District Court erred in applying *forum non conveniens* to dismiss Appellant's TVPA claim when Congress deliberately created a domestic cause of action for international trafficking victims because of a specifically articulated concern that foreign legal systems did not provide adequate relief.

3.  Whether the District Court abused its discretion when it dismissed Scarlett Pavlovich's TVPA claim on *forum non conveniens* grounds where: (1) Congress specifically created a domestic cause of action for international trafficking victims; (2) the only defendant is a Massachusetts resident sued in her home state; (3) no party or key witness resides in the remote forum of New Zealand; and (4) Appellant cannot obtain compensatory relief in the remote forum.

## STATEMENT OF THE CASE

In February 2025, Scarlett Pavlovich filed suit against Amanda Palmer in the United States District Court for the District of Massachusetts—the district of Palmer's residence. She asserted five claims: (1) human trafficking under 18 U.S.C. §§ 1591, 1595(a); (2) human trafficking and civil conspiracy under 18 U.S.C. § 1589 and § 1595(a); (3) human trafficking and civil conspiracy under 18 U.S.C. §§ 1590(a), 1595(a); (4) conspiracy to commit trafficking under 18 U.S.C. §§ 1594, 1595(a); and (5) negligence for Palmer's introduction of Scarlett to Gaiman and failure to warn her of the danger he posed (ECF 1).

Palmer moved to dismiss for *forum non conveniens* pursuant to Fed. R. Civ. P. 12(b)(3) and separately moved to dismiss for failure to state a claim and on the ground that the TVPA's civil remedy does not apply extraterritorially (ECF 12, 14, 16). On February 6, 2026, Senior District Judge Nathaniel M. Gorton granted the *forum non conveniens* motion and dismissed all claims without prejudice, declining to reach the merits of the TVPA extraterritoriality and sufficiency motions (ECF 32).

The district court found, first, that New Zealand was an adequate alternative forum because Palmer had stipulated to service of process there, and because the Accident Compensation Corporation ("ACC")—New Zealand's no-fault administrative scheme—as well as a potential exemplary damages action, provided

some remedy to Scarlett (ECF 32, p. 6). The court dismissed Scarlett's arguments that the ACC remedy was illusory given her departure to Scotland, stating that she had "already received a remedy" through ACC-sponsored therapy prior to voluntarily leaving New Zealand (ECF 32, pp. 11-12). On the interest-factor balancing, the district court found the private interests tilted toward dismissal given that both Gaiman and Palmer had agreed to submit to New Zealand jurisdiction, and found public interests favored dismissal because all relevant conduct occurred in New Zealand and New Zealand had the greater interest in deciding the case (ECF 32, pp. 9-10). The court also adopted the suggestion—without deciding it—that the TVPA's civil remedy does not reach extraterritorial conduct, citing *RJR Nabisco v. European Community*, 579 U.S. 325 (2016), and found that this provided no basis for recognizing a stronger U.S. interest in the litigation (ECF 32, p. 10). This appeal timely follows.

## STATEMENT OF FACTS

Scarlett Pavlovich is a citizen of New Zealand (ECF 1, p. 3). In 2020, while living in Auckland, she met Defendant Amanda Palmer, a U.S. citizen then lawfully domiciled in New Zealand (*id.*). At the time, Scarlett was twenty-two years old, financially insecure, and had a history of mental health crises (*id.* at 3-4). Palmer was then married to—but separated from—acclaimed author Neil Gaiman ("Gaiman"), with whom she shared a child and residences on Waiheke Island, accessible only by ferry from Auckland (ECF 1, p. 4).

In February 2022, Palmer offered to pay Scarlett to babysit the child at both residences. On February 4, 2022, while Scarlett was babysitting at Gaiman's residence, Gaiman sexually assaulted her. During the assault, Gaiman stated that Palmer had told him he could not "have" Scarlett, which "made him feel" he "had to have her." After the assault, Scarlett returned to Palmer's residence and continued babysitting as arranged. She did not initially tell Palmer what had occurred (ECF 1, pp. 5-6).

Shortly thereafter, Palmer offered Scarlett a position as a live-in nanny at both residences, with promises of pay and career assistance. Gaiman repeatedly raped and sexually assaulted Scarlett during her time as nanny. Neither Palmer nor Gaiman paid Scarlett for her services, leaving her unable to afford food, transportation off the island, or alternative housing (*id.*).

When Scarlett eventually informed Palmer of Gaiman's abuses, Palmer stated she was unsurprised and disclosed that she was aware of more than a dozen other women who had been subjected to similar abuse by Gaiman. Palmer offered to "take care" of Scarlett—as she claimed to have done for other victims—by providing temporary accommodation in Auckland (ECF 1, pp. 11-12).

Scarlett became suicidal while living in those temporary accommodations and was hospitalized for psychiatric treatment (ECF 1, p. 15). Upon discharge, she was told she could no longer stay in the accommodations but received a small amount of "rent money" from Gaiman after signing an employment agreement backdated to the date of

the first assault. Scarlett filed a police report in New Zealand, but no action was taken (ECF 1, pp. 15-16). She later moved to Scotland, where she is enrolled in university. Palmer now resides in Massachusetts; Gaiman resides in Wisconsin.

## SUMMARY OF THE ARGUMENT

The district court committed multiple reversible errors in dismissing this case.

First, the district court was wrong to suggest—even without deciding—that the TVPA's civil remedy provision, 18 U.S.C. § 1595(a), does not apply extraterritorially. Every circuit court to address the issue has held the opposite. The Fourth Circuit in *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019)—the only circuit court to squarely address the question—held that the TVPA's civil remedy applies extraterritorially to the extent that the underlying predicate offense does. That is the straightforward result of Congress's simultaneous 2008 decision to (a) extend the TVPA's criminal prohibitions to extraterritorial conduct and (b) expand the civil remedy to any "victim of a violation of this chapter." The district court's suggestion to the contrary rests entirely on an inapt analogy to RICO that the Supreme Court's holding in *RJR Nabisco* does not support.

Second, the doctrine of *forum non conveniens* cannot be invoked to override Congress's specific directive that TVPA victims may sue in U.S. courts. The Supreme Court has long held that the doctrine is a common law tool for managing cases where jurisdiction rests only on a general venue statute—not where Congress has specifically and deliberately opened American courts to particular claims. The TVPA is exactly such a specific jurisdictional provision, enacted with the express purpose of providing victims of international trafficking with access to U.S. courts when foreign legal systems fail them. To permit *forum non conveniens* dismissal of TVPA claims based on 'foreign

conduct' would be to negate the statute's core purpose, since *all* international trafficking cases involve foreign conduct.

Third, even if *forum non conveniens* were available, the district court abused its discretion in balancing the relevant interests. On the public interest side, the court failed to give any weight to Congress's explicit policy choice to open U.S. courts to international trafficking victims, or to the United States' strong sovereign interest in adjudicating TVPA claims against its own citizens for extraterritorial trafficking conduct. On the private interest side, the court failed to properly account for: (i) the plaintiff's choice of the defendant's home forum; (ii) the absence of any current witnesses or evidence in New Zealand; and (iii) the reality that the three key witnesses — Palmer, Gaiman, and Scarlett — are respectively in Massachusetts, Wisconsin, and Scotland, making Massachusetts the most convenient forum for all parties.

Fourth, New Zealand is not an adequate alternative forum. The district court's finding of adequacy rests on two pillars, each of which fails. The ACC scheme does not provide Scarlett any compensatory remedy—it provides mental health services, not money damages—and Scarlett cannot access even those services because she no longer lives in New Zealand and has no intention of returning to the country where she was trafficked. Exemplary (punitive) damages are not a compensatory remedy and cannot substitute for compensatory relief. The district court's additional finding that Scarlett had "already received a remedy" through ACC-funded therapy before leaving New Zealand confuses past benefit with present and future remedy: the question is not what

Scarlett received in the past, but what she can obtain going forward. On those facts,

New Zealand provides no meaningful remedy for her ongoing injuries.

## ARGUMENT

### I.    STANDARD OF REVIEW.

This Court reviews a district court's *forum non conveniens* dismissal for abuse of discretion. *Sysco Mach. Corp. v. Cymtek Sols., Inc.*, 124 F.4th 32, 37 (1st Cir. 2024); *Adelson v. Hananel*, 510 F.3d 43, 51 (1st Cir. 2007). However, that deferential standard applies only "to the ultimate disposition" of the motion. *Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 104 (1st Cir. 2020). Legal conclusions embedded in that decision—including the threshold legal question of whether *forum non conveniens* can apply at all to TVPA claims—are reviewed de novo. *See Adelson*, 510 F.3d at 52 (errors of law are reviewed de novo even in a discretionary *forum non conveniens* context). Similarly, the district court's ruling on whether the TVPA's civil remedy provision applies extraterritorially is a pure question of statutory construction reviewed *de novo. Id.*

### II.   CONGRESS'S 2008 AMENDMENT TO THE TVPA DELIBERATELY OPENED UNITED STATES COURTS TO CIVIL CLAIMS ARISING OUT OF U.S. CITIZENS' EXTRATERRITORIAL CONDUCT.

The district court declined to rule on Palmer's motion to dismiss on extraterritoriality grounds but expressed its view that the TVPA's civil remedy "does not apply extraterritorially," relying on *RJR Nabisco* and noting that the First Circuit has not addressed the issue. Addendum Tab 1 at 11. This Court should hold, as the Fourth Circuit and the overwhelming weight of district court authority has held, that the TVPA's civil remedy plainly reaches extraterritorial conduct.

As the Supreme Court held in *RJR Nabisco*, while the presumption against extraterritoriality "can be overcome only by a clear indication of extraterritorial effect," an "express statement of extraterritoriality is not essential." 579 U.S. 325, 337, 340 (2016). Rather, "context can be consulted as well." *Id.*, *quoting Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010). Here, the text, structure, purpose, and legislative history of the TVPA provide a clear and affirmative indication that Congress intended the civil remedy to reach extraterritorial conduct. This is not a close question.

### A. The TVPA Clearly and Unambiguously Provides a Civil Remedy for Extraterritorial Conduct.

The Fourth Circuit's decision in *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019)—the only circuit court decision in which the answer to this question was outcome determinative—is directly on point and should be followed. Applying *RJR Nabisco*'s two-step framework, the court first asked whether the relevant provision —§ 1595—"manifests an intent to apply extraterritorially." *Id.* at 237. It readily concluded that it does:

> Of crucial importance, § 1595 directly incorporates predicate offenses that govern foreign conduct, providing strong textual evidence of its extraterritorial effect when applied to those predicates. … Additionally, the purpose, structure, history, and context of the TVPA militate toward the extraterritorial application of § 1595, to the extent that the relevant predicate offenses reach the challenged foreign conduct at issue.

*Roe*, 917 F.3d at 241.

The Fourth Circuit thus concluded that "§ 1595 reflects congressional intent that it applies extraterritorially to the extent that a plaintiff seeks redress for a predicate offense that is itself extraterritorial." *Id.* at 242. Every other circuit to have addressed this issue has reached the same conclusion, albeit in *dicta. See Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 204 (5th Cir. 2017) (holding that the extension of extraterritorial jurisdiction in the 2008 amendments was not retroactive, because after Sec. 1596's enactment, "[a] TVPRA defendant in a civil suit could no longer rely on a previously available defense: the presumption against extraterritoriality"). *See also Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 953 (9th Cir. 2024) (treating extraterritorial reach after the 2008 amendments as a given), *reh'g en banc granted, opinion vacated*, 129 F.4th 1212 (9th Cir. 2025), *and on reh'g en banc*, 168 F.4th 541 (9th Cir. 2026). Indeed, the Ninth Circuit's *en banc* ruling in *Ratha*, issued just last month, specifically held that the scope of Section 1595(a) is coextensive with the TVPA's criminal provisions, finding that the purpose of the 2023 amendments to the TVPA was to clarify precisely that:

> In *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019), the Fourth Circuit held that "the text of § 1595 shows that it applies coextensively with its [criminal] predicate offenses." Id. at 243 (emphasis added). The Fourth Circuit thus held that Congress intended to authorize civil actions for all the same conduct that gives rise to criminal liability. It is undisputed that, beginning in 2008, criminal liability attached to any attempt to knowingly benefit from forced labor. Pub. L. 110-457, § 221, 122 Stat. 5044, 5067 (2008).
>
> After the First Circuit's decision in 2017, and again after the Fourth Circuit's decision in 2019, Congress saw no need to act. But we reached the opposite statutory interpretation in *Ratha I*. We held that the lack of the words "or attempts" in § 1595 itself was fatal to Plaintiffs' claims.

> *Ratha I*, 35 F.4th at 1176. In so doing, we rejected the interpretations of the First and Fourth Circuits, namely, that under the TVPRA criminal liability gives rise to coextensive civil liability, including for attempted violations of § 1589. Accordingly, when Congress passed the ATRA, it ended the circuit split created by *Ratha I*.

*Ratha*, 168 F.4th at 556–57 (emphasis in original)

The text of the statute confirms these circuits were correct in that conclusion. In 2008, Congress simultaneously enacted two amendments: (1) 18 U.S.C. § 1596, which provided extraterritorial jurisdiction over violations of the TVPA's core criminal prohibitions, including §§ 1589–1591; and (2) an amendment to § 1595(a) that broadened its civil remedy from victims of violations of only Sections 1589, 1590, or 1591 to any "individual who is a victim of a violation of this chapter." See William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, PL 110-457, § 223(a), Dec. 23, 2008, 122 Stat. 5071. Congress thus expanded the TVPA's criminal jurisdiction to extraterritorial conduct and, in the same bill, broadened the civil remedy to every victim of every violation. No clearer indication of extraterritorial application of the civil remedy could be asked for.

The breadth of that congressional intent is also confirmed by the TVPA's overarching purpose. Congress enacted the TVPA specifically because it was "concerned with international rather than purely domestic matters" and found that trafficking "is a transnational crime with national implications." 22 U.S.C. § 7101(b)(24); *see also F.C. v. Jacobs Solutions Inc.*, 790 F.Supp.3d 1158, 1183 (D.Colo. Jun. 26, 2025). The

TVPA was enacted in part expressly because Congress did not believe foreign legal systems provided adequate remedies to deter international trafficking or adequately compensate its victims. *See* 22 U.S.C. § 7101(b)(14)-(17). To construe the civil remedy as reaching only domestic conduct would eviscerate the statute's central remedial purpose and leave victims of extraterritorial trafficking—the very class Congress specifically targeted—without any federal remedy.

The legislative record also confirms that Congress intended § 1595 to operate extraterritorially in tandem with § 1596. Senate and House Reports preceding the 2008 reauthorization emphasized that the amendments were designed to ensure that trafficking victims exploited abroad are not shut out of U.S. courts. See Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464. Later reauthorizations, including the 2023 amendments that were designed to clarify that the TVPA's civil remedy was coextensive with its criminal provisions, repeated Congress's recognition that the TVPA combats conduct throughout the world. These statements reflect the statute's design as an extraterritorial remedy, ensuring alignment between its civil and criminal components.

The weight of lower court authority is to the same effect. The District of Colorado in *Jacobs Solutions* had "no trouble concluding that [t]hat analysis reveals that Congress intended to imbue the TVPRA's private cause of action with extraterritorial jurisdiction." 790 F.Supp.3d at 1180. The District of Columbia reached the same

conclusion in *Abernathy v. Carlyle Grp., Inc.*, No. CV 22-3603 (ABJ), 2024 WL 5331993, at *13 (D.D.C. Sept. 27, 2024). The Southern District of New York did the same just last month. *A.A. v. Omnicom Grp., Inc.*, No. 25-CV-3389 (JMF), 2026 WL 504904, at *17 (S.D.N.Y. Feb. 24, 2026) (the contrary view "ignores the key teaching of *RJR Nabisco*, which is that 'a statute may apply to foreign conduct insofar as it clearly and directly incorporates a predicate statutory provision that applies extraterritoriality.' *Howard*, 917 F.3d at 242 (*citing RJR Nabisco*, 579 U.S. at 339-41). Under that rule, the TVPRA's incorporation of predicate offenses with express extraterritorial effect in its private right of action is sufficient to resolve the issue at the first step"). And, as noted above, the Fourth, Fifth and Ninth Circuits agree. The district court cited no circuit authority for the contrary view, because none exists. This Court should join the Fourth, Fifth, and Ninth Circuits in recognizing that the 2008 amendments extended the TVPA's civil remedy to extraterritorial conduct.

### B. *RJR Nabisco*'s Holding Regarding RICO Does Not Change the Analysis

The district court was incorrect to conclude that *RJR Nabisco*'s analysis of the extraterritoriality of the RICO statute's civil remedy mandates the conclusion that the TVPA's civil remedy lacks extraterritorial effect. In *RJR Nabisco*, the Supreme Court found that RICO's civil remedy (unlike the TVPA's) was *not* coextensive with its criminal prohibitions—it required that the plaintiff have been "injured in [their] business or property by reason of a violation," excluding personal injuries. 579 U.S. at

350. Because the civil and criminal provisions were not coextensive, the extraterritorial effect of the criminal provisions could not provide the necessary signal that the civil provisions were also intended to apply extraterritorially, and the Court therefore required (and could not find) independent textual support before it could conclude that Congress intended RICO's civil remedy to apply extraterritorially. Indeed, RICO's civil action provision identified a RICO injury as a necessary element of the claim: only victims "injured in [their] business or property by reason of a violation" could bring a claim. 18 U.S.C. § 1964(c). Thus, the question for the Court in RJR Nabisco was whether the "injury" required for a 1964(c) claim could be foreign, or whether the injury itself had to be domestic. 579 U.S. at 346. That the RICO statute's predicate acts encompassed foreign conduct could not alone answer that question, because the RICO injury was a separate element of a civil action (and, as noted above, Congress had made clear it was not merely coextensive with RICO).

The TVPA is structured entirely differently; its civil and criminal provisions are deliberately and fully coextensive, and the extraterritorial effect of the criminal provisions is thus sufficient to signal that the civil provisions are equally extraterritorial. Section 1595(a) expressly makes its civil remedy fully coextensive with its criminal prohibitions, creating a civil action for any "victim of a violation of this chapter." 18 U.S.C. § 1595(a). It includes no separate "injury" requirement comparable to RICO. When Congress simultaneously made those criminal violations extraterritorial, the class

of potential plaintiffs (victims of those violations) necessarily included victims of the newly extraterritorial offenses. *Cf.* 579 U.S. at 352 (distinguishing RICO from antitrust on the basis that in the antitrust context, Congress's inclusion of foreign victims in the class of potential antitrust plaintiffs was a signal that it intended the antitrust remedy to extend extraterritorially). This coextensive structure is the "strong textual evidence" of extraterritorial effect that the Fourth Circuit recognized in *Roe* and that was absent from RICO. 917 F.3d at 241. *Cf. Ratha*, 168 F.4th at 556–57 (finding that Congress amended the TVPA again in 2023 specifically to clarify that the TVPA's civil and criminal provisions were coextensive, in order to correct prior erroneous holding that those provisions were *not* coextensive).

The district court's reflexive application of *RJR Nabisco* without analysis of the TVPA's distinct structure and history was legal error. *See A.A.*, 2026 WL 504904, at *17 (noting, after conducting *RJR Nabisco* analysis, that the "overwhelming majority of courts to consider the issue agree" the TVPA's civil provisions apply extraterritorially). This Court should thus hold that the TVPA's civil remedy, 18 U.S.C. § 1595(a), applies extraterritorially to the extent that the underlying predicate offense does. *See United States v. Baston*, 818 F.3d 651, 671 (11th Cir. 2016) ("Congress has the power to require international sex traffickers to pay restitution to their victims even when the sex trafficking occurs exclusively in another country").

## III.  THE COMMON LAW DOCTRINE OF FORUM NON CONVENIENS HAS NO APPLICATION TO TVPA CLAIMS.

Because Congress specifically directed that foreign trafficking victims such as Scarlett could have their claims heard in United States courts, the district court committed reversible error by invoking *forum non conveniens*.

*Forum non conveniens* is a prudential, common law doctrine that allows courts to resist jurisdiction where a plaintiff invokes only a *general* venue or jurisdiction statute and a foreign court would be clearly more appropriate. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). The doctrine exists precisely because general jurisdictional statutes like 28 U.S.C. §§ 1331 and 1332 do not reflect any congressional judgment about where particular cases should be heard, leaving courts free to manage their dockets as they choose. Where Congress has made that judgment specifically—determining that certain statutory claims should be heard in U.S. courts—the court has no discretion to override that legislative choice.

The Supreme Court established this principle in *U.S. v. Nat'l City Lines*, 334 U.S. 573, 588–89 (1948), holding that where Congress has specifically designated a forum for particular claims, courts may not rely on *forum non conveniens* to deprive the plaintiff of that chosen forum: "Congress' mandate regarding venue and the exercise of jurisdiction is binding upon the federal courts." *Id.* See also *Miles v. Illinois Cent. R. Co.*, 315 U.S. 698, 705 (1942). That principle was reinforced in *American Dredging Co. v. Miller*, 510 U.S. 443 (1994), where the Court emphasized the importance of respecting

Congress's specific venue choices. Other circuits have applied this principle to analogous federal statutes with specific jurisdictional provisions. *See, e.g.*, *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983)

This Court's decision in *Howe v. Goldcorp Invs. Ltd.*, 946 F.2d 944 (1st Cir. 1991), addressed the interplay between *forum non conveniens* and special venue statutes, and its holding confirms the principle. *Howe* held that *forum non conveniens* was available for securities claims because Congress had not shown a "special legislative intent" to bar transfer to a foreign forum. *Id.* at 948-49. But *Howe* expressly recognized that where such legislative intent exists, *forum non conveniens* dismissal is unavailable. *Id.* The TVPA is exactly that case. Unlike the securities laws at issue in *Howe*, the TVPA does not merely enlarge the courts empowered to hear a plaintiff's claim; it specifically and deliberately opened U.S. courts to claims arising from extraterritorial conduct, based on Congress's express finding that such claims needed to be heard in U.S. courts because foreign legal regimes were inadequate to deter such trafficking. The TVPA's structure makes plain that Congress considered, and affirmatively chose, to make U.S. courts available for claims arising from extraterritorial conduct. To permit *forum non conveniens* dismissal of such claims would nullify that choice for the class of plaintiffs Congress most directly sought to protect by extending jurisdiction to extraterritorial conduct: foreign victims of internationally-operated trafficking networks. That is the "special legislative intent" *Howe* identified as the line *forum non conveniens* cannot cross.

The district court declined to engage with this argument, dismissing it on the ground that there is "no case law support for the proposition that [TVPA extraterritoriality] is relevant to a forum non conveniens inquiry." Addendum Tab 1 at 12. That reasoning is circular. The question is not whether extraterritoriality is "relevant" to the *forum non conveniens* balancing test, but whether *forum non conveniens* can apply at all to a claim Congress specifically provided must be heard in U.S. courts. Congress's decision to open U.S. courts to victims of extraterritorial trafficking is the antecedent question, and it is a question that forecloses the *forum non conveniens* inquiry entirely. *See Nat'l City Lines*, 334 U.S. at 588-89.

Appellee may argue that Congress deliberately omitted a bar of *forum non conveniens* arguments from the TVPA, despite doing so in other statutes. But Congress's omission of any exhaustion or alternative-forum requirement from the TVPA is telling. The Torture Victim Protection Act—a parallel statute governing civil claims for extraterritorial human rights violations—expressly directs that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." Pub. L. No. 102-256, § 2(b) (1992) (codified at 28 U.S.C. § 1350 note). Congress thus knew exactly how to permit *forum non conveniens*-style dismissal of extraterritorial human rights claims. Its deliberate choice not to include any comparable exhaustion or adequacy requirement in the TVPA confirms that Congress intended U.S. courts to

hear TVPA claims even where an ostensibly adequate alternative foreign forum might exist.

The practical consequences of the district court's approach confirm it is wrong. The factors on which the court primarily relied—foreign situs of conduct, foreign witnesses—would apply to essentially every case brought by a foreign trafficking victim against a U.S. national for overseas conduct. A rule that such factors justify dismissal would systematically defeat the TVPA's extraterritorial civil remedy in precisely the cases Congress designed it to address. Congress does not legislate in vain, and this Court should not construe the statute to render it a nullity for its intended beneficiaries. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotations omitted).

## IV.   THE DISTRICT COURT ABUSED ITS DISCRETION IN BALANCING THE PUBLIC AND PRIVATE INTEREST FACTORS.

Even if *forum non conveniens* could in principle apply to TVPA claims, the district court's analysis was deeply flawed. Under this Court's precedent, the defendant bears a twofold burden: demonstrating both (1) an adequate alternative forum and (2) that the balance of "private and public interests implicated by the case" strongly favors dismissal. *Adelson*, 510 F.3d at 52; *Imamura*, 957 F.3d at 106. The court's deference to plaintiff's forum choice, though reduced because plaintiff did not select her home

forum, *remains entitled to considerable weight. Sysco Mach.*, 124 F.4th at 37. Palmer carried neither prong of that burden.

### A. The Public Interest Factors Strongly Favor Retention of Jurisdiction

The district court's public interest analysis rests on a single, flawed proposition: that because the underlying events occurred in New Zealand, New Zealand has a greater interest in adjudicating the dispute. That reasoning ignores two critical facts.

First, the defendant is a United States citizen currently residing in Massachusetts, being sued in her own state. The United States has a sovereign interest in adjudicating claims against its own citizens, particularly claims arising out of violations of federal law. The district court gave this interest no weight whatsoever. The principle that Massachusetts jurors would be "scratch[ing] their heads" about events in New Zealand, *see* Addendum Tab 1 at 12 (quoting *Pavlovich v. Gaiman*, 2025 WL 2819372 (W.D. Wis. Oct. 3, 2025)), fails to account for the fact that Palmer is a Massachusetts resident. Massachusetts has a real and direct interest in whether its own domiciliaries participate in international human trafficking schemes. The court's dismissive characterization cannot justify dismissing claims against a Massachusetts defendant for actions she took —at least in part through her Massachusetts-based decisions and relationship—to facilitate the trafficking of a vulnerable young woman.

Second, and more fundamentally, even if the Court finds that Congress's enactment of the TVPA does not entirely bar the application of *forum non conveniens*, it is undisputed that the United States has a strong and congressionally articulated interest in adjudicating TVPA claims against its citizens for extraterritorial trafficking. Congress's legislative findings expressly declared that "Domestic and international anti-trafficking law enforcement … must be strengthened" and that civil remedies serve as a critical mechanism for accomplishing that public interest. See 22 U.S.C. § 7101. The relevant public interest factor in *Imamura*—"the local interest in having localized controversies decided at home"—weighs for the forum that has legislated specifically to address the conduct at issue. 957 F.3d at 107. Congress enacted the TVPA precisely to ensure that U.S. courts adjudicate international trafficking claims, and where Congress has created such a remedy, courts should be hesitant to dismiss cases on *forum non conveniens* grounds. *Cf. In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987) (*en banc*) (noting that *forum non conveniens* "cannot be used to frustrate the remedial purpose of" federal statutes).The district court's analysis inverts this priority.

The Second Circuit has reached a similar conclusion. In *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000), the court reversed a *forum non conveniens* dismissal of human rights claims because the district court had failed to recognize that Congress had "expressed a policy of U.S. law favoring the adjudication of such suits in

U.S. courts," and that such suits "should not be facilely dismissed on the assumption that the ostensibly foreign controversy is not our business." *Id.* at 106. *See also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 339 (S.D.N.Y. 2003) (citing "the strong United States interest in vindicating international human rights violations" as militating against *forum non conveniens* dismissal of Alien Tort Statute action). Yet the district court made just that facile assumption below, failing to recognize *any* public interest in maintaining jurisdiction. That was clear error, and an abuse of discretion.

The court also incorrectly framed this as a purely "localized" controversy. TVPA claims are federal claims arising under federal law. The relevant public interest is not merely geographic—"where did the acts occur"—but whether the forum "is at home with the law that must govern the action." *Imamura*, 957 F.3d at 107. American courts are obviously more at home with the TVPA than any New Zealand tribunal. This factor, too, strongly favors the United States forum. *See Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 431 (1st Cir. 1991) (public interest factors include application of familiar law).

The district court's focus on the fact that "all relevant conduct occurred in New Zealand" is not controlling under First Circuit precedent. *Adelson*, 510 F.3d at 53. The question is not simply where the events physically occurred, but which forum has the greater interest in the dispute. Here, that is plainly the United States: the defendant is a U.S. citizen living in Massachusetts, the governing law is federal, and Congress has specifically declared its interest in adjudicating such claims.

Congress's explicit findings in the TVPA demonstrate a sustained national interest in providing U.S. judicial remedies against its citizens' involvement in global trafficking networks. 22 U.S.C. § 7101(b)(12), (24). This policy interest strongly supports retention of jurisdiction, and the private interest factors would therefore need to overwhelmingly favor transfer in order to overcome the strong public interest in denial of the motion. And they simply do not.

### B. The Private Interest Factors Favor Retention or Are Neutral

Indeed, the district court's private interest analysis was similarly erroneous.

First, the court erred in treating Palmer's voluntary stipulation to New Zealand jurisdiction as though it were a witness or evidence-access consideration favoring dismissal. It is not. Defendants in *forum non conveniens* cases routinely stipulate to foreign jurisdiction to bolster their dismissal motions. A defendant's strategic willingness to litigate in her preferred alternative forum does not demonstrate that the alternative forum is more convenient; it demonstrates only that the defendant prefers not to be sued at home. The court's elevation of Palmer's tactical maneuver to a dispositive factor under the private interest analysis was an abuse of discretion. *See Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000) (defendant bears heavy burden of showing considerations of convenience and judicial efficiency strongly favor the alternative forum). *See also Mercier*, 935 F.2d at 424-27 (the moving party must affirmatively demonstrate that a foreign forum can actually hear the case and provide a remedy).

Second, the court failed to properly account for the location of the parties in assessing the *relative* convenience of the fora. Scarlett currently lives in Scotland. Palmer lives in Massachusetts. Scarlett chose to sue in Massachusetts not as a matter of forum shopping, but because Massachusetts is Palmer's own home. Traveling from Scotland to Massachusetts is significantly more convenient for Scarlett than traveling to New Zealand, a country nearly 19,000 kilometers further from Scotland in the opposite direction from the United States. The court acknowledged the travel from the UK to New Zealand is "prodigious" but then dismissed this consideration by observing that "in either case, Pavlovich will need to fly thousands of miles overseas." Addendum Tab 1 at 10. That analysis is facially inadequate when one option requires traveling across two time zones and the other requires traveling across twelve or more. Indeed, the undisputed evidence established that the difference between litigating in New Zealand and Massachusetts would impact more than just travel: the time difference between Scotland and New Zealand would have a significant negative effect on Scarlett's ability to communicate with counsel, an issue that litigation in Massachusetts does not pose. (ECF 22, p. 14.) It was an abuse of discretion for the district court to entirely ignore that issue.

Third, the court's witness analysis was thin and speculative. The court acknowledged that neither Palmer nor Scarlett had identified specific witnesses in New Zealand or Massachusetts whose attendance would be materially affected by the forum

in which the case was litigated. *Id.* at 10. But as a matter of law, the absence of such specificity weighs *against* dismissal, not in favor of it. *See Mercier*, 935 F.2d at 424; *Piper Aircraft*, 454 U.S. at 241. The court's only counter-consideration—that Palmer and Gaiman agreed to submit to New Zealand jurisdiction—goes not to witness availability but to defendant preference. In any case, the district court was wrong: the parties and their own testimony are the most critical evidence in a TVPA claim of this nature, and those witnesses—Palmer (Massachusetts), Gaiman (Wisconsin), and Scarlett (Scotland)—are all closer to a Massachusetts court than to New Zealand, making Massachusetts the more convenient forum.

Indeed, that Palmer and Gaiman prefer New Zealand for reasons *other* than convenience (the absence of any meaningful risk of needing to pay damages for their conduct) no more transforms that preference into a *convenience* factor relevant to the private interest than a plaintiff's preference for favorable law would. *See Piper Aircraft*, 454 U.S. at 249; s*ee also Iragorri*, 203 F.3d at 14 (favorability or unfavorability of the law carries no more than small weight in the analysis). The refusal to consider the impact of changes in substantive law as a convenience factor is a rule that typically favors defendants. But sauce for the goose is sauce for the gander, and here, where the district court essentially found *no* private convenience to Palmer other than her preference for New Zealand's damages regime, that rule should have mandated denial of the motion, not its grant.

In sum, the private interest factors favor retention of jurisdiction, not dismissal. But even taken at face value and accepting the district court's view of those factors, the district court identified no particular convenience to the parties from litigating in New Zealand, only preference – and certainly not a strong enough private interest in litigating in New Zealand to outweigh the strong public interest in adjudicating Scarlett's TVPA claim here. On that record, dismissal was an abuse of discretion.

## V.   NEW ZEALAND IS NOT AN ADEQUATE ALTERNATIVE FORUM.

Even if *forum non conveniens* were available and the interest factors favored dismissal—and they do not—the district court still erred in finding New Zealand an adequate alternative forum. An adequate alternative forum must provide more than the theoretical existence of some remedy; it must provide a remedy that is not "so clearly inadequate or unsatisfactory that it is no remedy at all." *Imamura*, 957 F.3d at 106; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) New Zealand fails that test.

The district court identified two putative remedies available in New Zealand: (1) free mental health services through the ACC; and (2) exemplary (punitive) damages for "egregious conduct." Addendum Tab 1 at 7–12. Neither constitutes an adequate remedy for Scarlett's injuries.

### A. The ACC Mental health services are inadequate.

The ACC does not award compensatory damages. It provides access to mental health services for physical and mental injuries resulting from covered events. It does

not compensate for pain and suffering, loss of income, financial harm, or any of the other compensatory categories available under the TVPA. *See* 18 U.S.C. § 1595(a) (authorizing recovery of "damages and reasonable attorneys' fees"). The district court acknowledged that the ACC "does not provide compensation to victims for purely emotional injuries." Addendum Tab 1 at 8. The treatment it provides in lieu of compensation is not a monetary remedy: it is a welfare benefit. A welfare benefit is not an adequate substitute for the compensatory damages to which Scarlett is entitled as a victim of serial rape and human trafficking.

More fundamentally, Scarlett cannot access the ACC. She lives in Scotland. She is not a New Zealand resident and the undisputed record reflects she has no intention of returning to New Zealand. She has ongoing injuries for which she has not been compensated. The ACC scheme undisputedly provides no remedy for those ongoing injuries.

The district court dismissed this by reasoning that Scarlett had already received some ACC-funded therapy before voluntarily leaving New Zealand in 2024, and therefore "has already received a remedy for her mental injuries." Addendum Tab 1 at 8. This reasoning is legally erroneous. *Forum non conveniens* adequacy analysis asks whether the alternative forum "provides" an adequate remedy, namely a present and future inquiry about what relief a plaintiff can obtain if she pursues her claims there. *See Imamura*, 957 F.3d at 106. Past benefits Scarlett received as a matter of New Zealand

public health policy, before any litigation, are not a "remedy" in any legally cognizable sense. They are not the result of adjudication; they are not compensation for the injuries Palmer caused; and they do not diminish Scarlett's ongoing damages. The *forum non conveniens* adequacy inquiry cannot be satisfied by pointing to public services a plaintiff has already consumed.

Nor did Scarlett waive the inadequacy of the New Zealand forum by leaving the country. She had no obligation to remain indefinitely in the place where she was trafficked and assaulted, separated from friends and family, in order to preserve a theoretical future eligibility for an inadequate administrative benefit. *Cf. Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001) (ACC adequate where "New Zealand, through its no-fault accident compensation scheme, has provided and **continues to provide** a remedy") (emphasis added). The key phrase in *Lueck* is "continues to provide"—a condition not met here.

The circumstances of this case diverge sharply from those in *Lueck* and *Imamura*. In both cases, plaintiffs remained resident within those alternative forums and possessed legally viable claims, however limited, under each country's administrative scheme. Here, Scarlett cannot access ACC benefits, and New Zealand provides no legally cognizable compensation for her ongoing harm. Following *Imamura*, an alternative forum that only technically allows process but provides no operable remedy

is insufficient. Therefore, under the First Circuit's own standard, New Zealand is not a meaningfully "available" or "adequate" forum.

### B. The availability of exemplary damages is insufficient.

The availability of exemplary damages in New Zealand for "egregious conduct" does not save the forum. Punitive or exemplary damages are not a compensatory remedy; they are a deterrent and retributive mechanism. They do not compensate Scarlett for her injuries. The district court's finding that the "availability demonstrates that remedies beyond the ACC are available to her", Addendum Tab 1 at 8, mistakes the function of punitive damages. *See Piper Aircraft*, 454 U.S. at 254 (unfavorable change in law may be given "substantial weight" if the alternative forum's remedy is "so clearly inadequate or unsatisfactory" as to be no remedy at all). A forum that awards no compensatory damages but allows punitive damages does not thereby offer an adequate remedy.

Nor was there any record basis for the district court's conclusion that exemplary damages would be available to Scarlett to begin with. In support of her motion, Palmer submitted a declaration by a New Zealand attorney, *initially filed in the Gaiman litigation*, who opined that exemplary damages might be available *against Gaiman* in New Zealand (see ECF 22-1). But Gaiman was the individual who raped Scarlett. No expert has ever offered the opinion that *Palmer*'s conduct could trigger exemplary damages, particularly

in light of the undisputed evidence that human trafficking is treated in New Zealand civil law as a minor breach of contract (ECF 22-1, p. 9, fn. 15).

Moreover, Scarlett's TVPA claims arise entirely under United States federal law. New Zealand has no mechanism to adjudicate TVPA claims at all. *See Iragorri*, 203 F.3d at 14 (*citing Piper Aircraft*, 454 U.S. at 254, n.22). The question is thus not whether New Zealand offers some differing remedy that reflects a different policy choice about how to compensate victims; it is whether New Zealand provides a sufficient remedy for the specific human trafficking injuries this specific U.S. statute is intended to address. It does not. *Cf. Piper Aircraft*, 454 U.S. at 254 n.22.

The district court's determination that New Zealand is an adequate alternative forum, on these facts, was an abuse of discretion.

## CONCLUSION

For all of the foregoing reasons, the order of the district court should be reversed and this action remanded for further proceedings. Alternatively, this Court should remand with instructions that the district court address, in the first instance, whether the TVPA's civil remedy provision applies extraterritorially and, if so, whether *forum non conveniens* has any application to TVPA claims. Plaintiff-Appellant Scarlett Pavlovich respectfully requests that this Court grant her the relief requested.

SUBMITTED BY:

/s/Lane Andrew Haygood
Lane A. Haygood
**Kamerman, Uncyk, Soniker &
Klein, P.C.**
1700 Broadway
New York, NY 10019
Texas Bar No. 24066670
(212) 400-4930
lhaygood@kusklaw.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 1st Cir. R. 32.0(a), this brief contains fewer than 13,000 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font, 14-point.

/s/Lane Andrew Haygood
Lane A. Haygood
Attorney for Scarlett Pavlovich

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, the foregoing document was forwarded via the Court's electronic filing system to all counsel of record for Defendant-Appellee Amanda Palmer.

/s/Lane Andrew Haygood
Lane A. Haygood
Attorney for Scarlett Pavlovich

# ADDENDUM

## TABLE OF CONTENTS OF ADDENDUM

Tab 1 — Memorandum & Order, Pavlovich v. Palmer, No. 25-10263-NMG (D. Mass. Feb. 6, 2026) ................................................................................ A-1

Tab 2 — Final Order of Dismissal, Pavlovich v. Palmer, No. 25-10263-NMG (D. Mass. Feb. 6, 2026) ................................................................................ A-15

**TAB 1**

**MEMORANDUM & ORDER**
Pavlovich v. Palmer, No. 25-10263-NMG
United States District Court, District of Massachusetts
February 6, 2026

United States District Court
District of Massachusetts

| | |
|---|---|
| Scarlet Pavlovich, <br><br> Plaintiff, <br><br> v. <br><br> Amanda Palmer, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )  Civil Action No. <br> )  25-10263-NMG <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from claims of human trafficking and conspiracy brought by plaintiff, Scarlett Pavlovich ("plaintiff" or "Pavlovich"), against Amanda Palmer ("defendant" or "Palmer"), the former wife of her alleged abuser, Neil Gaiman ("Gaiman"). Defendant has moved to dismiss for <u>forum</u> <u>non</u> <u>conveniens</u>.[1] For the following reasons, the motion to dismiss will be allowed.

---

[1] Defendant also filed motions to dismiss for failure to state a claim and for inapplicable extraterritorial conduct under the Trafficking Victims Protection Act ("TVPA"). The Court declines to reach the merits of those motions.

1

## I. Facts

The Court accepts as true all well-pled factual allegations in the complaint.  Pavlovich is a citizen of New Zealand and resided therein during the relevant time period.  Palmer is a U.S. citizen who was lawfully domiciled in New Zealand during the relevant time period.  In 2020, the two met and became acquainted in Auckland, New Zealand.  At the time Pavlovich was twenty-two years old, financially insecure and had spent time unhoused.  She also had a history of mental health crises.

In February, 2022, Palmer offered to pay Pavlovich to babysit the child she shared with Gaiman, to whom she was married but from whom she was separated at the time.  The job required Pavlovich to spend time at the separate homes of both Palmer and Gaiman on Waiheke Island, which is accessible only by a 40-minute ferry ride from Auckland.  Pavlovich did not know nor have reason to know that Gaiman had previously been accused of sexually assaulting and/or raping numerous women.

On February 4, 2022, while Pavlovich was babysitting at Gaiman's residence, he sexually assaulted her.  During the incident Gaiman stated Palmer had told him that he could not "have [Pavlovich]," which made him feel "he had to have [her]."  After the attack, Pavlovich returned to Palmer's residence and

babysat as planned for the remainder of the weekend.  She did not mention the incident to Palmer.

Soon thereafter, Palmer offered Pavlovich a job as a live-in nanny.  The job again required Pavlovich to spend time at both residences.  Pavlovich accepted the offer after encouragement and promises of payment and career assistance by Palmer and Gaiman.  Gaiman repeatedly raped and/or sexually assaulted Pavlovich during the time she worked as the live-in nanny at both residences.  Neither Palmer nor Gaiman paid Pavlovich for her services.  As a result, Pavlovich could not afford food, transport off Waiheke Island or alternative housing.

Weeks later, Pavlovich informed Palmer about Gaiman's abuses.  Palmer allegedly was not surprised and told Pavlovich that she was aware of more than a dozen other women who had been subjected to similar sexual abuse by Gaiman.  Palmer never told Pavlovich about Gaiman's other victims prior to that conversation but offered to "take care" of Pavlovich, as she had done for other victims, by providing her with temporary accommodations in Auckland.

Pavlovich became suicidal while living in the temporary accommodations and was subsequently hospitalized for psychiatric

3

treatment.  Upon her release from the hospital, Pavlovich was told she could no longer stay in the temporary accommodations but received a small amount of "rent money" from Gaiman after she signed an employment agreement backdated to February 4, 2022, the date of the first alleged rape.

Pavlovich filed a police report accusing Gaiman of sexual assault but the police took no action and she later moved to Scotland, where she currently resides and is enrolled at a university.  Palmer currently lives in Massachusetts while Gaiman lives in Wisconsin.

## II.  Procedural History

In early February, 2025, plaintiff filed a complaint and demand for jury trial in this Court. She asserts five claims against Palmer: 1) human trafficking in violation of 18 U.S.C. §§1591, 1595(a) (count I); 2) human trafficking in violation of 18 U.S.C. §1589 and civil conspiracy (count II); 3) human trafficking in violation of 18 U.S.C. §§1590(a), 1595(a) and civil conspiracy (count III); 4) conspiracy to commit trafficking in violation of 18 U.S.C. §§1594, 1595(a) (count IV), and 5) negligence against Palmer for introducing plaintiff to Gaiman and failing to warn her of the unreasonable danger he posed.

4

Defendant now moves to dismiss all claims for forum non conveniens pursuant to Fed. R. Civ. P. 12(b)(3).

### III. Legal Standard

Forum non conveniens is a discretionary defense that empowers a district court to dismiss an action when a court abroad is the more appropriate and convenient forum. Sysco Mach. Corp. v. Cymtek Sols., Inc., 124 F.4th 32, 37 (1st Cir. 2024). Although plaintiff's chosen forum is entitled to deference, that presumption applies with less force when the plaintiff's choice is not her home forum. Id.

The moving party's burden is twofold; it must establish that (1) an adequate alternative forum is available and (2) considerations of convenience and judicial efficiency strongly favor litigating the claim in that alternative forum. Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007).

### A. Adequate Forum

An adequate forum must meet two requirements: (1) all parties are subject to that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. Imamura v. Gen. Elec. Co., 957 F.3d 98, 106 (1st Cir. 2020).

5

The first requirement (the forum's "availability") is typically satisfied if the defendant is amenable to service of process there. Id.  As to the second requirement (the forum's "adequacy"), an alternative forum is adequate unless the remedy it provides "is so clearly inadequate or unsatisfactory that it is no remedy at all." Id.

## B. Convenience and Judicial Efficiency

The second and more complicated inquiry involves balancing "the compendium of factors relevant to the private and public interests implicated by the case" to determine whether defendant has demonstrated that dismissal is appropriate.  Relevant private interest factors include

> the relative ease of access to sources of proof; availability [and cost] of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.

Id. at 107.  The relevant public interest factors include

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (internal quotations omitted).

6

## IV.  Analysis

### A. Availability and Adequacy

It is undisputed that Palmer stipulated to service of process in New Zealand.  The Court need not undertake additional analysis on availability.

Plaintiff contests the adequacy of New Zealand as an alternative forum.  She argues that, because New Zealand has adopted a no-fault compensation scheme for victims of accidents and intentional torts outside of the court system ("the Accident Compensation Corporation" or "ACC"), New Zealand cannot be considered an adequate alternative forum.

The fact that plaintiff's claim in New Zealand would be handled outside of the judicial system does not necessarily mean New Zealand is an inadequate forum.  Indeed, courts have consistently found New Zealand (and many other countries with similar adjudicative remedies) to be adequate alternative forums notwithstanding the lack of formal court proceedings. See, e.g., Lueck v. Sundstrand Corp., 236 F.3d 1137, 1144 (9th Cir. 2011); Imamura, 957 F.3d at 112.  The relevant inquiry is not whether litigation is available but whether the remedy offered "is so clearly inadequate or unsatisfactory that it is no remedy at

7

all." Imamura, 957 F.3d at 106.  That is plainly not the case here.

Although the ACC does not provide compensation to victims for purely emotional injuries, victims are afforded access to free mental health services to treat any emotional injury. Given that a compensatory damage award would presumably be used to pay for that kind of treatment, the Court finds such a remedy to be sufficient.

Plaintiff responds that she does not live in New Zealand and thus cannot access available services.  Yet the record before this Court indicates that she was receiving government-sponsored therapy until she voluntarily left New Zealand in 2024.  Thus, plaintiff has already received a remedy for her mental injuries.

The therapy provided by the ACC without cost is not the only remedy available to Pavlovich in New Zealand; she could also pursue exemplary damages for egregious conduct.  Plaintiff responds that "such damages do not provide compensation for the injuries Scarlet suffered."  Whether such exemplary damages are awarded specifically for her pain and suffering is irrelevant; their availability demonstrates that remedies beyond the ACC are available to her.

8

Although such remedies may be less comprehensive than those available in the United States, plaintiff is not without relief in New Zealand. That is all that is required under the doctrine of _forum_ _non_ _conveniens_ for New Zealand to be deemed an adequate forum.

## B. Convenience and Judicial Economy

The Court proceeds to consideration of the private and public interests implicated by the case and its possible transfer.

### i. Private Interests

The primary inquiry under the private interest analysis is the convenience of the parties and access to witnesses and evidence. Pavlovich contends that the case has only three key witnesses: Palmer, Gaiman and herself, none of whom currently resides in New Zealand. That argument ignores the fundamental fact that Gaiman and Palmer have both agreed to submit to the jurisdiction of New Zealand. The Court will not ignore that reality and exercise jurisdiction over parties in a civil case who would clearly be inconvenienced thereby and would prefer to proceed in New Zealand.

As for plaintiff's convenience, although the flight from the United Kingdom to New Zealand is prodigious, the flight to

9

Massachusetts is hardly convenient.  In either case, Pavlovich will need to fly thousands of miles overseas, and the closer proximity of Massachusetts does not outweigh the other factors in favor of dismissal.

Pavlovich takes issue with Palmer's claim that all relevant witnesses and evidence are in New Zealand, noting that Palmer has not identified any specific testimony that would be proffered in New Zealand.  The same can, however, be said of Pavlovich who has not identified any potential witness in Massachusetts other than Palmer.  Furthermore, Palmer has made it clear that she is amenable to jurisdiction in New Zealand.

Finally, Pavlovich claims that dismissal of her case would make it more difficult to coordinate this case with the one against Gaiman, which has been filed in the Western District of Wisconsin.  That argument is now moot because the case against Gaiman was dismissed for forum non conveniens in October, 2025.

In sum, the private interests tilt in favor of dismissal.

### ii.  Public Interests

The public interest analysis, as briefed by the parties, depends upon which forum has a stronger interest in adjudicating the dispute.  Notwithstanding the fact that all relevant conduct occurred in New Zealand, Pavlovich asserts that the United

10

States has a strong interest in hearing the case.  The only support she offers for her contention is that, under the TVPA, American courts have extraterritorial jurisdiction over any offense identified in certain criminal laws prohibiting trafficking, and victims of those criminal laws may bring civil actions against the perpetrators to recover damages.  Pavlovich suggests that because the criminal actions 1) have extraterritorial application and 2) allow victims to pursue civil claims, a civil action brought by a victim has extraterritorial application as well.

The problem with that reasoning is that the TVPA civil remedy does <u>not</u> apply extraterritorially, and Supreme Court precedent indicates that, in the absence of any statutory language authorizing extraterritorial application, such a civil remedy is limited to domestic application. <u>RJR Nabisco</u> v. <u>Eur. Cmty.</u>, 579 U.S. 325 (2016) (holding that RICO's civil remedies provision lacks extraterritorial application, notwithstanding the extraterritorial reach of the underlying criminal provisions).

The First Circuit has not considered whether the civil remedy provision applies extra-territorially and other appeals courts have differed in their holdings.  Given such uncertainty,

11

this Court is disinclined to find that Pavlovich's civil claim has extraterritorial application.  Even assuming, arguendo, that the TVPA civil remedy provision applies outside the United States, there is no caselaw support for the proposition that it is relevant to a forum non conveniens inquiry.

Having disposed of the TVPA issue, it is clear to the Court that New Zealand has a greater interest in deciding this case. Plaintiff is a citizen of New Zealand, all the underlying conduct took place in New Zealand and defendant was a lawful resident of New Zealand during the relevant time period.  Common sense dictates that New Zealand is the more interested forum. As United States District Judge James D. Peterson (W.D. Wis.) observed when dismissing Pavlovich's case against Gaiman,

> [Massachusetts] jurors would be scratching their heads about how and why they were being asked to decide a dispute regarding such far away events that have nothing to do with them.

12

## ORDER

For the foregoing reasons, the motion to dismiss for <u>forum non conveniens</u> is **ALLOWED**.

**So ordered.**

_Nathaniel M. Gorton_

Nathaniel M. Gorton
Senior United States District Judge

Dated:  February 6 , 2026

13

**TAB 2**

**FINAL ORDER OF DISMISSAL**
Pavlovich v. Palmer, No. 25-10263-NMG
United States District Court, District of Massachusetts
February 6, 2026

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action
No: 1:25-cv-10263-NMG

Plaintiff

Imer Payes Gonzalez

v.

Defendant

Amanda Palmer

ORDER OF DISMISSAL

GORTON, D.J.

In accordance with the Courts Order entered on February 6, 2026, it is hereby ORDERED that the above-entitled action be and hereby is dismissed.

By the Court,

/s/ Nicole Cowan
Docket Clerk

February 6, 2026