**No. 26-1151**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

**SCARLETT PAVLOVICH,**
*Plaintiff-Appellant*
**v.**
**AMANDA PALMER,**
*Defendant-Appellee*

On Appeal from the United States District Court
for the District of Massachusetts
Civil Action No. 25-10263-NMG

# REPLY BRIEF OF APPELLANT SCARLETT PAVLOVICH


SUBMITTED BY:
/s/ Lane Andrew Haygood
Lane A. Haygood
KAMERMAN, UNCYK, SONIKER
& KLEIN, P.C.
1700 Broadway
New York, NY 10019
Texas Bar No. 24066670
(212) 400-4930
lhaygood@kusklaw.com


**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

1. PAVLOVICH DID NOT WAIVE THE ARGUMENT THAT *FORUM NON CONVENIENS* CANNOT DISPLACE THE FEDERAL FORUM CONGRESS PROVIDED. ........ 2

A. The district court considered and rejected the contention, which is the end of the waiver inquiry. ........ 2

B. A party who has preserved a claim may support it with any argument. ........ 3

C. In any event, the recognized exceptions to the raise-or-waive rule apply. ........ 4

D. Counsel's statement at argument in a different appeal waives nothing here. ........ 4

2. HOWE FRAMES THE QUESTION AND ANSWERS IT IN PAVLOVICH'S FAVOR. ........ 5

A. Howe asked whether Congress had made a particular judgment; the TVPA supplies what the securities laws lacked. ........ 5

B. Palmer's supporting authorities all involve ordinary commercial venue provisions. ........ 6

C. Palmer's account of Wiwa is Pavlovich's argument. ........ 7

D. Palmer's a fortiori argument runs backwards. ........ 8

E. The Court need not adopt a categorical rule to reverse. ........ 9

3. THE BALANCE STRUCK BELOW RESTED ON LEGAL ERROR AND MISALLOCATED THE BURDEN. ........ 9

A. Reduced deference is a presumption about convenience, and presumptions yield to facts. ........ 9

B. Palmer bore the burden, and she never carried it. .....10

C. A stipulation to jurisdiction goes to availability, not convenience. .....12

D. The risk of parallel litigation does not point to New Zealand. .....12

E. The public-interest analysis omitted the factor that mattered most. .....13

4. NEW ZEALAND IS NOT AN ADEQUATE FORUM FOR THE CLAIMS AGAINST PALMER. .....15

A. The record contains no evidence of any remedy against Palmer. .....15

B. Palmer's answer describes the complaint, not New Zealand law. .....16

C. Palmer does not defend the district court's reasoning about past therapy. 17

5. IF THE COURT REACHES EXTRATERRITORIALITY, PALMER IS SQUARELY WITHIN SECTION 1596 .....18

A. The Court should not affirm on a ground the district court declined to decide. .....18

B. Palmer is a United States national, and Section 1596 reaches her. .....18

C. Palmer's treatment of Ratha and Adhikari concedes the decisive premise. 19

D. Palmer never answers the structural distinction from RJR Nabisco. .....21

CONCLUSION .....22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. v. Omnicom Group, Inc.*, 2026 WL 504904 (S.D.N.Y. Feb. 24, 2026)...........22

*Adelson v. Hananel*, 510 F.3d 43 (1st Cir. 2007) ............................................ 10, 12

*Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184 (5th Cir. 2017) ................21

*Capital Currency Exchange v. National Westminster Bank PLC*, 155 F.3d 603 (2d Cir. 1998) ..........................................................................................7

*Correa v. Hosp. San Francisco*, 69 F.3d 1184 (1st Cir. 1995).................................4

*Doe v. Apple, Inc.*, 2021 U.S. Dist. LEXIS 237710 (D.D.C. Nov. 2, 2021) ...........22

*F.C. v. Jacobs Solutions Inc.*, 790 F. Supp. 3d 1158 (D. Colo. 2025) ....................22

*Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944 (1st Cir. 1991)......................5, 6

*Imamura v. Gen. Elec. Co.*, 957 F.3d 98 (1st Cir. 2020)..........................................4

*In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987)..........7

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 887 F. Supp. 1469 (N.D. Ala. 1995).......................................................................................17

*In re Volkswagen AG*, No. 23-40487, 2023 U.S. App. LEXIS 31195 (5th Cir. Nov. 21, 2023).............................................................................7

*Intec USA LLC v. Engle*, No. 05-C-6171, 2005 U.S. Dist. LEXIS 33365 (N.D. Ill. Dec. 13, 2005) ........................................................................13

*Jane Doe L.C. v. Aimbridge Hospitality, LLC*, No. 19-cv-1762 (MN), 2020 U.S. Dist. LEXIS 172336 (D. Del. Sept. 21, 2020)..................................14

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ..................................3

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ...................................17

*Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419 (1st Cir. 1991).......................... 10, 16

*Mia v. Kimberly-Clark Corp.*, 2025 U.S. Dist. LEXIS 42876 (D.D.C. Mar. 10, 2025).........................................................................22

*Nat'l Ass'n of Social Workers v. Harwood*, 69 F.3d 622 (1st Cir. 1995).............3, 4

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)....................................................9

*Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653 (6th Cir. 2021).......................7

*Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026).................. 19, 20

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)....................................................20

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016)..........................21

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) ................................................. 18, 19

*S.R.J. v. Marriott International, Inc.*, No. 2:21-cv-1863,
2022 WL 11306888 (W.D. Pa. Oct. 19, 2022) ...................................... 11, 14, 15

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007)..............10

*Sysco Mach. Corp. v. Cymtek Sols., Inc.*, 124 F.4th 32 (1st Cir. 2024) ....... 8, 10, 13

*Transunion Corp. v. Pepsico, Inc.*, 811 F.2d 127 (2d Cir. 1987)..............................7

*United States v. Williams*, 504 U.S. 36 (1992) ........................................................3

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000)................. 7, 8, 14

*Xu Lun v. Milwaukee Electric Tool Corp.*, 2025 U.S. Dist. LEXIS 233614
(E.D. Wis. Dec. 1, 2025)..........................................................................................22

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ........................................................3

**Statutes**

18 U.S.C. § 1595(a) ......................................................................................... 1, 14, 21

18 U.S.C. § 1596 .................................................................................................... 1, 14

22 U.S.C. § 7101(b) ......................................................................................... 6, 13, 14

28 U.S.C. § 1404(a) ...........................................................................................................12

**Other Authorities**

122 Stat. 5044 ..........................................................................................................6

136 Stat. 6199 (2023).....................................................................................................21

136 Stat. 6200 (2023).....................................................................................................21

Pub. L. No. 102-256, § 2(b) ..........................................................................................8

Pub. L. No. 110-457, § 221 ..........................................................................................6

Pub. L. No. 110-457, § 223 ..........................................................................................6

Pub. L. No. 117-347, § 102 ..........................................................................................21

## INTRODUCTION

Palmer's brief rests on a substitution. It answers the case against Neil Gaiman rather than the case against Amanda Palmer, and it treats the Seventh Circuit's disposition of the Gaiman appeal as though it resolved this one. It did not. Gaiman is a British citizen who was living in many places. Palmer is an American citizen who lives in Massachusetts and who was sued in her own home district. That distinction is not a detail of geography. It is the difference between a complex foreign controversy and a federal claim against a United States national for conduct Congress made actionable wherever in the world it occurs. 18 U.S.C. §§ 1595(a), 1596.

Three things Palmer's brief does not do.

First, she does not defend the district court's actual holding. The court did not weigh the federal interest and find it outweighed. It declared the question off the table, reasoning that there is "no case law support for the proposition that [the TVPA's extraterritorial reach] is relevant to a *forum non conveniens* inquiry." Appendix Tab 1 at 12. Palmer's brief never quotes that sentence.

Second, she does not identify a witness or a document in New Zealand. Not one, in the district court or in this Court. The only witnesses anyone has ever named are the three principals, and none of them lives in New Zealand.

Third, she does not point to any record evidence that any remedy is available

against *her* in New Zealand. Her expert declaration—prepared for the Gaiman litigation—addressed exemplary damages against the man who is alleged to have committed the rapes. Palmer's answer to that record gap is one sentence and a citation without a page number. Palmer Br. 31.

On the law, Palmer's waiver argument cannot survive the district court's own order, which addressed the contention on the merits. Her reading of *Howe* omits the reasoning that decides this case. And her extraterritoriality argument—offered as an alternative ground on a question the district court expressly declined to decide—never confronts the fact that Palmer herself is a United States national squarely within Section 1596.

## 1. PAVLOVICH DID NOT WAIVE THE ARGUMENT THAT *FORUM NON CONVENIENS* CANNOT DISPLACE THE FEDERAL FORUM CONGRESS PROVIDED.

### A. The district court considered and rejected the contention, which is the end of the waiver inquiry.

Palmer devotes three pages to the proposition that Pavlovich never raised below the argument that *forum non conveniens* is unavailable for TVPA claims. Palmer Br. 11–13. The district court's order refutes it. The court addressed the contention that Congress's decision to open United States courts to victims of extraterritorial trafficking bore on the availability of dismissal, and rejected it on the ground that there is "no case law support for the proposition that [it] is relevant to a *forum non conveniens* inquiry." Appendix Tab 1 at 12. A court does not rule

on an argument nobody made.

An argument that the district court "passed upon" is preserved for review, whatever the label the parties attached to it. *United States v. Williams*, 504 U.S. 36, 41 (1992). The purposes of the raise-or-waive rule—protecting the trial court from ambush and preserving an adequate record—have no work to do where the trial judge considered the point and wrote about it. See *Nat'l Ass'n of Social Workers v. Harwood*, 69 F.3d 622, 627 (1st Cir. 1995).

**B. A party who has preserved a claim may support it with any argument.**

Even setting aside the district court's treatment of the issue, Palmer confuses claims with arguments. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); accord *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995). The claim presented below was that Palmer had not carried her burden and that dismissal on *forum non conveniens* grounds was unwarranted. Pavlovich pressed that claim through three separate lines of attack. D.E. 22. That the argument urged here is broader—that the doctrine should not have been reached at all as to a claim Congress placed in federal court—does not make it a different claim.

Palmer's rule would produce an odd result. A litigant who argues that a doctrine was misapplied would forfeit the argument that the doctrine did not apply,

even though the second contention is contained within the first. Appellate courts do not parse preservation that finely.

### C. In any event, the recognized exceptions to the raise-or-waive rule apply.

The raise-or-waive rule "is a matter of discretion," not jurisdiction. *Harwood*, 69 F.3d at 627. This Court has identified the circumstances that justify its relaxation: where the issue is a pure question of law, where the record is complete and further factfinding unnecessary, where the answer is clear, where the issue is of broad public concern, and where the equities preponderate in favor of correction. *Id.* at 625–29; *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1196 (1st Cir. 1995). Every one of those considerations is present.

The question whether Section 1595 forecloses *forum non conveniens* dismissal is purely legal. It requires no facts beyond the statute. It has now been briefed by both sides in this Court on the merits, so there is no unfairness in resolving it. It is a question of first impression in this Circuit that will recur. And its resolution is potentially dispositive: a district court that believes it possesses discretion it does not possess has committed "a material error of law," which "invariably constitutes an abuse of discretion." *Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 106 (1st Cir. 2020). This Court cannot affirm a discretionary judgment premised on a mistaken view of the court's own authority.

### D. Counsel's statement at argument in a different appeal waives nothing here.

Palmer's remaining waiver argument is that Pavlovich's counsel conceded the point at oral argument in the Seventh Circuit, in the separate action against Gaiman. Palmer Br. 7, 13 n.4. Waiver is case-specific and record-specific. A concession made in one case, on one record, against one defendant, does not bind a party in a different case against a different defendant. Palmer cites no authority for the contrary proposition, because there is none.

Nor does the Seventh Circuit's decision supply what Palmer needs. That court did not hold that *forum non conveniens* applies to TVPA claims; rather, having found the contrary argument waived in that proceeding, it assumed extraterritoriality *arguendo*. Its disposition binds no one here.[1]

## 2. HOWE FRAMES THE QUESTION AND ANSWERS IT IN PAVLOVICH'S FAVOR.

Palmer reads *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944 (1st Cir. 1991), as holding that a special venue provision can never displace *forum non conveniens*. That is not what this Court held, and Palmer's own quotations show it.

### A. Howe asked whether Congress had made a particular judgment; the TVPA supplies what the securities laws lacked.

*Howe* rejected the Securities and Exchange Commission's categorical

---

[1]Palmer faults Pavlovich for not filing a notice under Fed. R. App. P. 28(j). Palmer Br. 2 n.1. Rule 28(j) is permissive: a party "may promptly advise the circuit clerk" of pertinent supplemental authority, and there was in any event no reason for Pavlovich to file such a notice in advance of Palmer's briefing, which was sure to raise the decision for Pavlovich's rebuttal in this Reply. In any event, the decision Palmer identifies is not final, and this Court now has the decision before it.

position that courts "never have the power" to dismiss a private securities case on *forum non conveniens* grounds. 946 F.2d at 950 (emphasis in original). The Court reached that result by asking what Congress had been doing when it enacted the provision in question, and by answering that Congress had been legislating about domestic litigation. The special venue statutes were enacted, this Court explained, "likely out of a desire to widen plaintiffs' venue choices in typical domestic cases." *Id.* That is the premise of the holding. It was reasonable to conclude that a provision addressed to domestic venue said nothing about international dismissal.

Section 1596 is the opposite kind of enactment. Congress did not extend the TVPA abroad while thinking about domestic dockets. It extended the statute abroad because it had found, in express legislative findings, that trafficking is "a transnational crime with national implications" and that existing foreign responses were inadequate to deter it or to compensate its victims. 22 U.S.C. § 7101(b)(14)–(17), (24). And in the same 2008 enactment, Congress broadened Section 1595 from a remedy for violations of three enumerated sections to a remedy for "an individual who is a victim of a violation of this chapter." Pub. L. No. 110-457, §§ 221, 223(a), 122 Stat. 5044. The "special legislative intent" that *Howe* looked for and did not find in the securities laws is written on the face of this statute.

**B. Palmer's supporting authorities all involve ordinary commercial venue provisions.**

The cases Palmer marshals confirm the distinction rather than erase it.

*Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653 (6th Cir. 2021), and *Capital Currency Exchange v. National Westminster Bank PLC*, 155 F.3d 603 (2d Cir. 1998), construed the Clayton Act's venue provision. *In re Volkswagen AG*, No. 23-40487, 2023 U.S. App. LEXIS 31195 (5th Cir. Nov. 21, 2023), concerned 28 U.S.C. § 1404(a). *Transunion Corp. v. Pepsico, Inc.*, 811 F.2d 127 (2d Cir. 1987), involved RICO, and *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987) (en banc), the Jones Act. Every one of them is a "typical domestic" venue provision of the sort *Howe* described. Not one arose under a statute that Congress enacted on an express finding that foreign remedies were failing the intended beneficiaries.[2]

### C. Palmer's account of Wiwa is Pavlovich's argument.

Palmer says *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000), "directly refutes" Pavlovich's position because the Second Circuit held that the Torture Victim Protection Act had not "nullified, or even significantly diminished, the doctrine of *forum non conveniens*." Palmer Br. 21–22. She then acknowledges what the court did: it vacated the dismissal, because the district court had abused its discretion in balancing the competing interests—specifically,

[2]Palmer attributes to this Court the proposition that special venue provisions "simply add[] to the number of courts empowered to hear a plaintiff's claim," citing "*Id.* at 662" in a string of citations to *Howe*. Palmer Br. 15. *Howe* appears at pages 944 to 953 of volume 946 of the Federal Reporter, Second Series. The quoted language is the Sixth Circuit's, in *Prevent USA*, 17 F.4th at 661–62, describing the Clayton Act. The misattribution matters, because the Clayton Act's venue provision is precisely the "typical domestic" provision *Howe* distinguished.

by failing to credit the congressional policy favoring adjudication of such claims in United States courts. 226 F.3d at 99, 106.

That is this case. Pavlovich's primary submission is that Section 1596 forecloses dismissal outright. But if this Court concludes otherwise and holds only that the statutory policy is a factor to be weighed, *Wiwa* still requires reversal. The district court did not underweight that policy; it declined to weigh it at all, on the express (and impermissible) ground that it was irrelevant. Appendix Tab 1 at 12. A court that refuses to consider a material factor abuses its discretion. *Sysco Mach. Corp. v. Cymtek Sols., Inc.*, 124 F.4th 32, 37 (1st Cir. 2024).

**D. Palmer's a fortiori argument runs backwards.**

Palmer argues in a footnote that if the Torture Victim Protection Act did not displace *forum non conveniens*, then "a fortiori" the later Trafficking Victims Protection Act did not either. Palmer Br. 22 n.7. The inference does not follow, because the two statutes differ in exactly the relevant respect. The Torture Victim Protection Act contains an express local-remedies requirement: a court "shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." Pub. L. No. 102-256, § 2(b) (codified at 28 U.S.C. § 1350 note). Congress there told courts, in terms, to send claimants to the foreign forum when an adequate remedy exists there.

Congress included no such provision in the TVPA. If a statute that *directs* deference to the local forum nonetheless carries a policy against facile dismissal, *Wiwa*, 226 F.3d at 106, then a statute that omits any such direction carries at least as much. Palmer's footnote proves the point it was written to defeat.

### E. The Court need not adopt a categorical rule to reverse.

Pavlovich has argued that *forum non conveniens* has no application to TVPA claims. The Court need not go that far. A narrower holding disposes of this appeal: where a plaintiff sues a United States national in her home district under Section 1595 for conduct within Section 1596's extraterritorial grant, the doctrine cannot be used to close the courthouse Congress deliberately opened. That rule leaves untouched the ordinary run of cases Palmer's authorities describe, and it resolves this one.

## 3. THE BALANCE STRUCK BELOW RESTED ON LEGAL ERROR AND MISALLOCATED THE BURDEN.

### A. Reduced deference is a presumption about convenience, and presumptions yield to facts.

Palmer returns repeatedly to the observation that Pavlovich did not sue in her home forum. Palmer Br. 25–26. The observation is accurate and beside the point. The reason a foreign plaintiff's choice receives less deference is a presumption about convenience: "[w]hen the plaintiff is foreign, . . . th[e] assumption [that the chosen forum is convenient] is much less reasonable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981); see *Sinochem Int'l Co. v. Malay.*

*Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).[3]

A presumption about convenience must give way to evidence about convenience. Pavlovich did not select the District of Massachusetts because it was convenient in the abstract or because its law was congenial. She selected it because it is where the sole defendant lives. Suing a defendant at home is the least suspicious forum choice in the law, particularly when New Zealand is more remote for both parties as Pavlovich now resides in Scotland. Whatever discount attaches to a foreign plaintiff's selection, it cannot convert the defendant's own domicile into an inconvenient forum for the defendant.

**B. Palmer bore the burden, and she never carried it.**

Palmer complains that Pavlovich "has never identified a single material witness (other than Ms. Palmer) or a single significant piece of evidence that might be found in Massachusetts." Palmer Br. 37. The burden ran the other way. The movant must "affirmatively demonstrate" that the private and public factors strongly favor the alternative forum. *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424–27 (1st Cir. 1991); *Adelson v. Hananel*, 510 F.3d 43, 52 (1st Cir. 2007).

Palmer has never identified a witness in New Zealand either. Nor a

---

[3]Pavlovich does not press the phrase "considerable weight" as a quotation from *Sysco Machinery*. See Palmer Br. 26 n.9. The governing formulation is that the presumption "applies with less force." 124 F.4th at 37. Less force is not no force, and the reason the force is lessened is the point made in text.

document. Nor a category of proof. Her brief asserts that "every other conceivable witness . . . would be available in New Zealand, because that is where all the alleged events occurred." Palmer Br. 37. That is a syllogism, not a showing. The district court found that neither party had identified witnesses whose attendance would be affected by the forum. Appendix Tab 1 at 10. On that finding, the movant loses; the plaintiff has no obligation to fill the gap.

Palmer's own authority shows what a showing looks like. In *S.R.J. v. Marriott International, Inc.*, No. 2:21-cv-1863, 2022 WL 11306888 (W.D. Pa. Oct. 19, 2022)—which Palmer calls a clear and relevant precedent, Palmer Br. 36–37—the movants catalogued the proof located in the foreign forum: the physical premises of the hotel, the hotel and spa employees, the investigative and medical files of the Tourist Assistance Center, the police investigative file, the contracts among the resort entities, and the file from the criminal investigation of the alleged assailant. *Id.* at *2, *3. The district court dismissed on that record. Palmer has offered this Court nothing of the kind. Her showing is the assertion that the events occurred in New Zealand, which is the premise of the motion rather than proof of it.

And the identified witnesses point one way. Palmer is in Massachusetts. Gaiman is in Wisconsin. Pavlovich is in Scotland. The claims against Palmer turn largely on what Palmer knew, what she said, and what she arranged—proof that

resides with Palmer, in Massachusetts, and in her own documents and communications, which are no more located in New Zealand than she is.

### C. A stipulation to jurisdiction goes to availability, not convenience.

The district court treated Palmer's and Gaiman's consent to New Zealand jurisdiction as a private-interest factor favoring dismissal, and Palmer defends that treatment. Palmer Br. 36–37. Consent to service and jurisdiction is how a movant satisfies the *availability* prong of the threshold inquiry, but does not speak to **whether** there is a cause of action available against Palmer there (and there is not, particularly not a cause of action for which punitive damages can be assessed). *Adelson*, 510 F.3d at 52; Appendix Tab 1 at 6–7. Counting it a second time as a convenience factor lets a defendant manufacture the balance she is supposed to prove. Every *forum non conveniens* movant stipulates. If the stipulation itself tipped the private factors, the private factors would always tip.

### D. The risk of parallel litigation does not point to New Zealand.

Palmer argues that permitting the case to proceed here would have produced duplicative actions against her and Gaiman in different districts. Palmer Br. 37 n.13. Joint tortfeasors are not necessary parties, and a plaintiff is entitled to sue each defendant where that defendant resides. If duplication were the concern, the remedy was consolidation or transfer under 28 U.S.C. § 1404(a)—relief Palmer never sought. In any event, the observation does not identify New Zealand as more

convenient; it identifies a single United States forum as more efficient than two.

### E. The public-interest analysis omitted the factor that mattered most.

On the public side, the district court reasoned that because the events occurred in New Zealand, New Zealand has the greater interest. Appendix Tab 1 at 11–12. That reasoning treats a public-interest inquiry as a geography question and gives no weight at all to two facts.

The first is that Palmer is a United States citizen domiciled in Massachusetts. Palmer's own authorities supply the principle: "New Zealand has a strong interest in regulating purported misconduct committed by its residents." *Intec USA LLC v. Engle*, No. 05-C-6171, 2005 U.S. Dist. LEXIS 33365, at *13 (N.D. Ill. Dec. 13, 2005), quoted at Palmer Br. 36. Palmer is not a New Zealand resident. She is a Massachusetts resident. The principle she invokes locates the interest here.

The second is Congress's declared interest in providing a United States forum for claims of this kind. 22 U.S.C. § 7101(b). The district court did not weigh that interest lightly; it announced that the statute's reach was not "relevant" to the inquiry. Appendix Tab 1 at 12. Failure to consider a material factor is an independent ground for reversal. *Sysco Mach. Corp.*, 124 F.4th at 37.

Palmer faults Pavlovich for not distinguishing two decisions she describes as "clear and relevant precedents" on sexual assaults abroad. Palmer Br. 36–37. Neither bears on this case, because neither rested on a federal claim. *S.R.J.* pleaded

only state-law torts—negligence, respondeat superior, intentional and negligent infliction of emotional distress, and false imprisonment—against four hotel corporations and ten unnamed corporate defendants; the man alleged to have committed the assault, a spa therapist at a Mexican resort, was not a party. *S.R.J.* at *1. Palmer describes no federal claim in *Jane Doe L.C. v. Aimbridge Hospitality, LLC*, No. 19-cv-1762 (MN), 2020 U.S. Dist. LEXIS 172336 (D. Del. Sept. 21, 2020), either, and the reasoning she quotes from it is purely locational: the public interest "inures to the setting in which the alleged incident took place." Palmer Br. 37. Where the only federal interest in a case is the diversity of the parties' citizenship, the situs of the injury is the whole of the public-interest ledger, and the situs prevails by default. That is not this case. Congress has declared that, *for reasons of the United States' national interest in preventing the occurrence abroad of precisely the conduct alleged here,* the courts of the United States must be open to claims of this kind against United States nationals wherever the conduct occurs. 18 U.S.C. §§ 1595(a), 1596; 22 U.S.C. § 7101(b). Neither of Palmer's decisions had occasion to weigh that judgment. The published authority that has weighed it holds that failing to do so is error. *Wiwa*, 226 F.3d at 106.

The particulars of *S.R.J.* cut against Palmer in any event. The court dismissed because no witness and no item of evidence was located in the chosen district, so that the trial would have devolved "into a trial by video." *S.R.J.* at *4.

Here the sole defendant, her documents, and her communications are in Massachusetts. The forum's only tie to that case was the plaintiff's own asserted domicile, in a residence conveyed to her by her parents after the incident and after she retained counsel, *id.* at *2, *3; the tie here is the defendant's actual domicile. The court there anticipated having to apply Mexican law under Pennsylvania's governmental-interest analysis, a body of law with which it had no familiarity, *id.* at *5; Pavlovich's claim arises under a federal statute that a federal court is uniquely suited to apply and that the New Zealand courts cannot entertain at all. And the *S.R.J.* plaintiff was already prosecuting a parallel action in Mexico, *id.* at *3, which is what made the adequacy of that forum concrete. Pavlovich has filed nothing in New Zealand, and Palmer's only evidence of an available remedy there concerns a different defendant. Whatever these unpublished district court decisions may show, they do not show that the forum Congress chose must yield here.

## 4. NEW ZEALAND IS NOT AN ADEQUATE FORUM FOR THE CLAIMS AGAINST PALMER.

### A. The record contains no evidence of any remedy against Palmer.

Pavlovich's opening brief identified a specific evidentiary gap: the expert declaration Palmer submitted was prepared for the Gaiman litigation and opined that exemplary damages might be available against *Gaiman*, the alleged rapist. No expert has ever opined that Palmer's alleged conduct—introducing Pavlovich to Gaiman and failing to warn her—could support exemplary damages under New

Zealand law. Appellant Br. 30.

Palmer's response is a single sentence: she "presented an expert affidavit to the District Court that confirmed the availability of exemplary damages in New Zealand." Palmer Br. 31 (citing D.E. 28-1). There is no page citation, and there is no such opinion. On a motion where the movant bears the burden of demonstrating an adequate alternative forum, a general gesture toward a declaration prepared about someone else does not carry it. *Mercier*, 935 F.2d at 426.

**B. Palmer's answer describes the complaint, not New Zealand law.**

Palmer responds that Pavlovich seeks to hold her and Gaiman jointly liable, and quotes the complaint's allegations about Palmer's role. Palmer Br. 30–31. Those allegations describe what Pavlovich must prove. They say nothing about whether New Zealand law would permit exemplary damages against a defendant on that theory, given the bar the accident compensation scheme imposes on compensatory recovery. That was Palmer's burden of proof on foreign law, and it remains unmet.

Palmer also invokes a statement in Pavlovich's opposition below that New Zealand law permits a victim of sexual abuse to sue for "limited damages." Palmer Br. 31 (citing D.E. 22 at 10). Read in context, that sentence described claims against an assailant, and the operative word was "limited." A concession that a rape victim may recover something from her rapist is not a concession that she

may recover anything from a third party alleged to have been negligent.

### C. Palmer does not defend the district court's reasoning about past therapy.

The district court held that Pavlovich had "already received a remedy" because she obtained publicly funded therapy in New Zealand before she left. Appendix Tab 1 at 8. Pavlovich explained why that reasoning is legally erroneous: the adequacy inquiry asks what relief a plaintiff can obtain if she litigates in the alternative forum, not what public benefits she consumed before any litigation began. Appellant Br. 27–29. Palmer does not engage that argument. She restates the district court's conclusion. Palmer Br. 29.

Her own authorities draw the distinction. *Lueck v. Sundstrand Corp.* found New Zealand adequate because the compensation scheme "has provided and continues to provide a remedy." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001). *In re Silicone Gel Breast Implant Prods. Liab. Litig.* spoke of "those . . . who can use the court system or pursue administrative remedies in New Zealand." 887 F. Supp. 1469, 1477 (N.D. Ala. 1995), quoted at Palmer Br. 28–29. Pavlovich lives in Scotland and cannot. Palmer's string citation of cases finding New Zealand adequate proves only that New Zealand is adequate for plaintiffs who are in New Zealand, litigating claims New Zealand law recognizes. Each of those cases involved personal-injury or product claims for which the accident compensation scheme was designed. None involved a federal statutory cause of

action with no counterpart in the alternative forum.

## 5. IF THE COURT REACHES EXTRATERRITORIALITY, PALMER IS SQUARELY WITHIN SECTION 1596.

### A. The Court should not affirm on a ground the district court declined to decide.

Palmer devotes twenty pages to extraterritoriality while conceding that "this Court need not decide" the question. Palmer Br. 38. The district court expressly declined to reach it. Appendix Tab 1 at 34, 43. If this Court agrees that the *forum non conveniens* dismissal cannot stand, then reversal and rendering is the appropriate remedy.

### B. Palmer is a United States national, and Section 1596 reaches her.

Palmer's central move on the merits is to cabin *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019), to its facts: the defendant there was a State Department employee whose conduct occurred on embassy premises, so Section 7(9) and 18 U.S.C. § 3271 supplied the extraterritorial reach of the predicates. Palmer Br. 54–56. Pavlovich does not dispute that account of how the predicates reached the conduct in *Roe*. It is beside the point, because Section 1596 supplies the same reach here.

Section 1596 confers extraterritorial jurisdiction over offenses under Sections 1581, 1583, 1584, 1589, 1590, and 1591 where the alleged offender is "a national of the United States or an alien lawfully admitted for permanent residence," or is present in the United States. Palmer's own brief recites that

condition. Palmer Br. 49. Her brief then never mentions that she satisfies it. Palmer is a United States citizen. The predicate offenses alleged against her reach her conduct in New Zealand by the plain terms of Section 1596.

That is what makes *Roe*'s holding on Section 1595 controlling rather than distinguishable. *Roe* held that "§ 1595 reflects congressional intent that it applies extraterritorially to the extent that a plaintiff seeks redress for a predicate offense that is itself extraterritorial." 917 F.3d at 242. The mechanism by which a particular predicate reaches abroad varies from case to case; the holding about Section 1595 does not.

### C. Palmer's treatment of Ratha and Adhikari concedes the decisive premise.

Palmer argues that *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) (en banc), *petition for cert. filed* (U.S. July 23, 2026), did not address extraterritoriality and that the word does not appear in the opinion. Palmer Br. 57. Pavlovich never claimed otherwise. *Ratha* was cited for a different and essential proposition, which Palmer concedes: the *en banc* court adopted the reading that Section 1595 applies coextensively with the TVPA's criminal provisions, and treated Congress's 2023 amendment as confirming that coextensiveness. 168 F.4th at 554, 556–57. Coextensiveness is the entire argument. If the civil remedy is coextensive with criminal prohibitions that Congress extended abroad, the civil remedy extends abroad with them.

Two features of *Ratha* that Palmer does not mention make the point stronger. First, the coextensiveness formulation is not the Ninth Circuit's. It is *Roe*'s, and the *en banc* court adopted it as the correct reading of the statute. So did four of the five dissenting judges, who said of *Roe*'s holding that Section 1595 applies coextensively with its predicate offenses: "This is correct and not in dispute." 168 F.4th at 568 (Callahan, J., dissenting, joined in relevant part by Bade, Bress, and Johnstone, JJ.). Palmer asks this Court to treat as an outlier a proposition on which ten of the eleven judges sitting *en banc* agreed.

Second, *Ratha* records that this Court reached the same reading nine years ago. The *en banc* court identified *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), as one of the two decisions from which its panel opinion had departed, reading *Ricchio* to have concluded that Section 1595 supplies a civil remedy for conduct made unlawful by Section 1594 even though Section 1595 does not itself mention it. 168 F.4th at 557; *see id.* at 555–56. The dissenting judges read *Ricchio* differently, as a case about perpetrator rather than beneficiary liability, *id.* at 566–69 (Callahan, J., dissenting), but that disagreement concerned which theories of liability carry attempt liability, not whether Section 1595 tracks its predicate offenses—a proposition no judge questioned. Congress then resolved the resulting conflict against the narrow reading. Palmer's brief does not cite *Ricchio*.

That history matters because Palmer's structural argument is the argument

Congress rejected. The panel decision in *Ratha* reasoned that because a term appeared in the chapter's general-provisions section and not in Section 1595 itself, the civil remedy did not reach it. Within months Congress amended Section 1595 by an enactment it titled a technical and clarifying update. Pub. L. No. 117-347, § 102, 136 Stat. 6199, 6200 (2023). Palmer now asks this Court to draw the same negative inference from the list of sections in Section 1596.

In *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184 (5th Cir. 2017), Palmer notes that the defendants there did "not dispute that the 2008 Amendment enables federal courts to entertain a private party's civil suit that alleges extraterritorial violations of the TVPRA." Palmer Br. 58 (quoting 845 F.3d at 201). The Fifth Circuit proceeded on that understanding and rested its holding on retroactivity.

**D. Palmer never answers the structural distinction from RJR Nabisco.**

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016), turned on a feature of Section 1964(c) that Section 1595 does not share. RICO's civil provision conditions recovery on injury "in [the plaintiff's] business or property," making the injury a separate element whose location the criminal provisions could not fix. 579 U.S. at 346, 350. Section 1595 contains no analogous element; it opens the courthouse to "an individual who is a victim of a violation of this chapter." Pavlovich's opening brief developed that distinction at length. Appellant Br. 14–

17. Palmer's brief does not mention it. Nor does it mention *A.A. v. Omnicom Group, Inc.*, 2026 WL 504904 (S.D.N.Y. Feb. 24, 2026), or *F.C. v. Jacobs Solutions Inc.*, 790 F. Supp. 3d 1158 (D. Colo. 2025), or the 2023 amendments.[4]

The authorities Palmer does rely on are distinguishable on the face of her own descriptions. *Doe v. Apple, Inc.*, 2021 U.S. Dist. LEXIS 237710 (D.D.C. Nov. 2, 2021), *aff'd on other grounds*, 96 F.4th 403 (D.C. Cir. 2024), and *Mia v. Kimberly-Clark Corp.*, 2025 U.S. Dist. LEXIS 42876 (D.D.C. Mar. 10, 2025), were beneficiary cases: the alleged offenders were foreign actors abroad, and the defendants were domestic corporations said to have knowingly benefited from foreign ventures. Palmer Br. 51–52. Section 1596's national-of-the-United-States hook was not in play. Here the alleged offender is the defendant, and she is a United States citizen. *Xu Lun v. Milwaukee Electric Tool Corp.*, 2025 U.S. Dist. LEXIS 233614 (E.D. Wis. Dec. 1, 2025), is the same posture. Palmer Br. 44–45, 50.

## CONCLUSION

For the foregoing reasons and those stated in her opening brief, Pavlovich respectfully requests that this Court reverse the judgment of the district court and

---

[4]Palmer's two leading authorities, *Doe v. Apple* and *Mia v. Kimberly-Clark*, are decisions of the same district judge in the same district. See Palmer Br. 51 (citing No. 1:19-cv-03737 (CJN) and No. 1:22-cv-02353 (CJN)). Against them stand a published circuit decision, Roe, and a growing body of district authority Palmer does not mention.

remand for further proceedings. In the alternative, this Court should remand with instructions that the district court determine, in the first instance, whether 18 U.S.C. § 1595(a) reaches Palmer's alleged conduct and, if so, whether *forum non conveniens* has any application to such a claim.

Respectfully submitted,

/s/ *Lane Andrew Haygood*
Lane A. Haygood
**Kamerman, Uncyk, Soniker & Klein, P.C.**
1700 Broadway
New York, NY 10019
Texas Bar No. 24066670
(212) 400-4930
lhaygood@kusklaw.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 1st Cir. R. 32.0(a), this brief contains 5,818 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font, 14-point.

/s/ Lane Andrew Haygood
Lane A. Haygood
*Attorney for Scarlett Pavlovich*

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, the foregoing document was forwarded via the Court's electronic filing system to all counsel of record for Defendant-Appellee Amanda Palmer.

/s/ Lane Andrew Haygood
Lane A. Haygood
*Attorney for Scarlett Pavlovich*